# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**GENERATOR GURU LIMITED**,
 Plaintiff,

v.             2:24-cv-925-KCD-NPM

**GENERATOR GURU LLC**
and **ALEXANDER R. LATTIMORE**,
 Defendants.

---

## REPORT AND RECOMMENDATION

Before the court is plaintiff Generator Guru Limited's motion for default judgment against defendants Generator Guru LLC ("GGL") and Alexander R. Lattimore.[1] (Doc. 18). The clerk previously defaulted Defendants for failing to answer or otherwise defend. (Docs. 15, 16, 17). Neither defendant has responded to the motion for default judgment, and the response time has lapsed.[2] The motion should be granted in part.

## Background

This is a trademark-infringement and cybersquatting case. Plaintiff Generator Guru is a world leader in parts for electric generators, and generator servicing and repair. (Doc. 1 ¶ 9). Plaintiff is the owner of a valid and federally registered

---

[1] Defendant Lattimore is the managing member and registered agent of GGL. (Doc. 1 ¶ 5).

[2] Plaintiff served the motion for default judgment on the defendants. (Doc. 18 at 30).

trademark depicted here:

# GENERATOR GURU

(Doc. 1-1).[3] Over the past fifteen years, Plaintiff has used the Generator Guru mark in commerce throughout the United States in connection with engineering services in the field of electricity generator servicing and repairs. (Doc. 1 ¶¶ 10-11). Utilizing this mark in substantial advertising and promotion—including its website www.generatorguru.com—Plaintiff has "acquired incalculable distinction, reputation, and goodwill." *Id.* at ¶¶ 12-13; (Doc. 1-2). As a result, consumers associate the name Generator Guru with high-quality services and repairs of electricity generators. *Id.* at ¶ 13.

Using Plaintiff's identical mark—Generator Guru—the defendants began operating in the same industry: electricity generator services, including the installation, repair, maintenance, and servicing of generators in Florida and throughout the United States. *Id.* at ¶¶ 14-16; (Doc. 1-3). But in 2023, the defendants registered the domain www.thegenguru.com, later changed to www.mygenguru.com, to promote and offer counterfeit electricity generator services and repairs under Plaintiff's mark. *Id.* at ¶ 18; (Docs. 1-4, 1-7). Defendants also used the Generator Guru mark on social media and online review platforms such

---

[3] On November 19, 2019, the Generator Guru mark was registered on the Principal Register in the United States Patent and Trademark Office as Registration No. 5911665. (Doc. 1-1).

as Facebook and Yelp. *Id.* at ¶ 18; (Doc. 1-5).

Plaintiff sent letters to Defendants, objecting to their unauthorized use of the Generator Guru mark and demanding that they cease using the mark.[4] *Id.* at ¶¶ 20, 22; (Docs. 1-6, 1-8). But even after receiving notice of their wrongdoing, Defendants continued their willful infringement of the Generator Guru mark and never responded to Plaintiff's letters. *Id.* Defendants' deliberate infringement deceived the market, confused customers, and diverted potential sales of Plaintiff's services to Defendants. *Id.* at ¶¶ 25-26; (Docs. 1-9; 1-10).

Plaintiff filed a seven-count complaint against Defendants that includes claims for federal and common law trademark infringement (Counts I and IV), counterfeiting (Count II), false designation of origin (Count III), common law unfair competition (Count V), violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI), and cybersquatting (Count VII). Plaintiff seeks injunctive relief, cancellation of defendants' domain name, statutory and punitive damages, and an award of attorney's fees and costs. (Doc. 1; Doc. 18 at 15-29).

---

[4] On December 4, 2023, Plaintiff sent its first cease-and-desist letter to the defendants. At some point, Defendants' first website, www.thegenguru.com, was taken down. Sometime around April 2024, defendants began using a new domain, www.mygenguru.com, and continued to do so even after Plaintiff sent a second cease-and-desist letter on August 16, 2024. (Doc. 1 ¶¶ 18-24).

## Legal Standard

When a defendant has failed to plead or defend, a district court may enter judgment by default. Fed. R. Civ. P. 55(b)(2). "Because of our strong policy of determining cases on their merits, however, default judgments are generally disfavored." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-1245 (11th Cir. 2015). So, "there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982). Therefore, we review subject-matter jurisdiction, personal jurisdiction, service of process, and whether the complaint states a claim upon which relief may be granted before entering judgment. *See Winfield Sols., LLC v. DeAngelo Bros., LLC*, No. 3:21-cv-1280-BJD-LLL, 2022 WL 3136840, *1 (M.D. Fla. July 1, 2022), *report and recommendation adopted*, 2022 WL 3646084 (Aug. 8, 2022).

## Analysis

The court has federal question jurisdiction over Counts I, II, III, and VII of the complaint pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Counts IV, V, and VI pursuant to 28 U.S.C. § 1367.[5] Personal jurisdiction over the

---

[5] Plaintiff also alleges jurisdiction pursuant to 28 U.S.C. § 1338(a) (Doc. 1 ¶ 7), which, in part, confers "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."

defendants exists because Lattimore[6] is domiciled in Florida and GGL has its principal place of business and is incorporated in Florida. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Defendants were properly served via substitute service of process pursuant to Fla. Stats. §§ 48.061, 48.062, and 48.181. (Doc. 15). And because they failed to answer, they have admitted all non-frivolous allegations in the complaint, except those going to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6).

Default judgment is warranted when there is a sufficient basis in the pleadings for judgment to be entered. *See Surtain*, 789 F.3d at 1245. When evaluating the sufficiency of the alleged facts, a court looks to whether the complaint contains sufficient factual matter that, when accepted as true, states a claim for relief that is plausible on its face. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### Federal and Common Law Trademark Infringement and Common Law Unfair Competition (Counts I, IV, and V)

"The analysis for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act." *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1289

---

[6] Lattimore is not a minor and there is no indication that he is incompetent. Moreover, Plaintiff has supplied an affidavit under the Servicemembers Civil Relief Act, 50 U.S.C.A. § 501 *et seq.*, demonstrating that Lattimore is neither in military service nor otherwise exempt from default judgment. (Doc. 18-2). As such, Lattimore is not disqualified from having a default judgment entered against him.

(S.D. Fla. 2016). "Courts may [also] use an analysis of federal infringement claims as a measuring stick in evaluating the merits of state law claims of unfair competition." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001). Indeed, "[c]ommon law and statutory trademark infringements are merely specific aspects of unfair competition." *Id.* at 1193-94 n.5.

The Lanham Act seeks to protect trademark owners from infringement and unfair competition "by prohibiting the use in interstate commerce of any word, term, name, symbol or device, ... or any false designation of origin ... which is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1344 (11th Cir. 2012) (quoting 15 U.S.C. § 1125(a)). To prevail on the Lanham Act claim, a trademark owner must establish: "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Id.* at 1346.

The well-pleaded factual allegations of Plaintiff's complaint state a plausible claim for federal trademark infringement, Florida common law trademark infringement, and unfair competition. First, Plaintiff adequately alleges that it had rights to the Generator Guru mark before Defendants' use of the same mark. (Doc. 1 ¶¶ 9-13); *see Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1216-17 (11th Cir. 2000)

6

(The threshold matter in both common law and federal trademark infringement claims is whether plaintiff's "use of the mark … predate[s] the defendant's potentially confusing mark."). Plaintiff's Generator Guru mark is registered on the principal register, and as such is "prima facie evidence … of the owner's exclusive right to use the registered mark …." *See* 15 U.S.C. § 1057. Furthermore, Plaintiff spent time and resources promoting the mark and associating it with the servicing and repairs of electricity generators long before Defendants began using the same mark to promote and sell similar generator services. (Doc. 1 ¶¶ 9-13).

Second, Plaintiff alleges that the Generator Guru mark is used by Defendants in commerce to offer identical services, and that Defendants were promoting their services using the mark on their website and on social media. *Id.* at ¶¶ 14-17.

And third, Plaintiff has sufficiently alleged that consumers are likely to confuse Plaintiff's Generator Guru mark with Defendants' similar infringing mark, which Defendants use in connection with identical services. *Id.* at ¶¶ 24-25. Whether a likelihood of confusion exists is determined by evaluating the following factors: "the strength of the trade[mark], the similarity of [the mark], the similarity of the product, the similarity of retail outlets and purchasers, the similarity of advertising media used, the defendant's intent, and actual confusion." *Suntree Techs., Inc.*, 693 F.3d at 1346.

Here, Defendants use the same Generator Guru mark as Plaintiff, which is identical in appearance and meaning; Defendants offer identical services in the field of electricity generator servicing and repairs; Defendants and Plaintiff's trade channels and advertising media are the same, as both parties sell their services through online platforms and advertise through websites and social media; Defendants' intent can be characterized as willful and deliberate since they continued using the infringing mark after receiving Plaintiff's cease and desist notices; and at least one customer expressed actual confusion when it contacted Defendants under the belief that they were offering Plaintiff's services. (Doc. 1-9 at 3). Because Plaintiff has alleged a plausible claim for trademark infringement and unfair competition under both the Lanham Act and Florida common law, a default judgment in its favor is appropriate.[7]

---

[7] "Because corporations are run by individuals, natural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act." *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1163–64 (11th Cir. 2022); *Brand Ventures, Inc. v. TAC5, LLC*, No. 6:17-cv-1983-ORL-40KRS, 2018 WL 2011112, *2 (M.D. Fla. Apr. 30, 2018) ("A corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing the corporate veil."). "An individual is personally liable if []he actively and knowingly caused the infringement." *Id.* "It is not sufficient to show that the individual participated or engaged in some infringing act; the individual must have actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Id.* "In other words, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity is personally liable for that infringement." *Id.* Plaintiff has alleged that Lattimore, who is the managing member and registered agent of GGL, "conducts business in Florida including selling, offering, rendering electricity generator servicing and repair services using the GENERATOR GURU mark" and "is a moving and active force behind [GGL], including actively participating in and directing its infringing activity[.]" (Doc. 1 ¶¶ 3-5). Given Lattimore admitted these facts by virtue of the clerk's default, Plaintiff has met its burden of establishing Lattimore's personal liability.

## Trademark Counterfeiting (Count II)

Under Section 32 of the Lanham Act, a person is liable for trademark counterfeiting when they "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). A counterfeit mark is a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

The complaint plausibly alleges a trademark counterfeiting claim. (Doc. 1 ¶¶ 36-43). As discussed above, Defendants used a spurious mark that is identical to Plaintiff's Generator Guru mark in connection with offering identical electricity generator services, which has caused and is likely to continue to cause consumer confusion. Thus, a default judgment is appropriate on the trademark counterfeiting claim as well.

## False Designation of Origin (Count III)

"[A] false designation of origin claim … proscribes the behavior of 'passing off' or 'palming off,' which occurs when a producer misrepresents his own goods or services as someone else's." *Custom Mfg. & Eng'r., Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007). "The test for liability for false designation or

origin … is the same as for a trademark counterfeiting and infringement claim—*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Chanel, Inc.*, 240 F. Supp. 3d at 1289. Given that Plaintiff has established an infringement claim, the false-designation-of-origin claim is also satisfied (Doc. 1 ¶¶ 44-50), so a default judgment on this count is appropriate.

### Florida Deceptive and Unfair Trade Practices Act (Count VI)

"The purpose of FDUTPA is '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Suntree Techs., Inc.*, 693 F.3d at 1345 (quoting Fla. Stat. § 501.202(2)). And engaging in trademark infringement constitutes an unfair and deceptive trade practice under FDUTPA. *Altor Locks, LLC v. Proven Indus., Inc.*, No. 8:22-cv-597-MSS-TGW, 2022 WL 17987073, *4 (M.D. Fla. Oct. 18, 2022). Given that Plaintiff has established a sufficient basis for trademark infringement, and the same legal standard applies in FDUTPA cases, Plaintiff is entitled to a default judgment against Defendants as to Count VI (Doc. 1 ¶¶ 64-71).

### Cybersquatting (Count VII)

The Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), was enacted to prevent cybersquatting, which is "essentially extortion." *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 775 (11th Cir. 2015). One way that

cybersquatting occurs is "when the cybersquatter intend[s] to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's." *Id.* "In a sense, the cybersquatter muddies the clear pool of the trademark owner's goodwill and then profits off the resulting murkiness." *Id.* To state a claim for violating the ACPA, a plaintiff must show that the defendant (1) registered the domain name; (2) that the domain name was identical or confusingly similar to its trademark that was distinctive at the time of registration; and, (3) that the domain name was registered in bad faith. *Id.* at 778; *see also* 15 U.S.C. § 1125(d).

Here, Plaintiff has alleged that its mark, Generator Guru, is presumptively distinctive as it has been federally registered on the Principal Register since 2019. (Doc. 1 ¶ 76). After Plaintiff's mark was already distinctive and registered, Defendants registered and used the domain name "mygenguru.com," which is confusingly similar to the Generator Guru mark. *Id.* at ¶¶ 77-78; *see generally Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) (explaining that "[t]he taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law" and that the "addition of generic or minor words to a trademark, especially a famous trademark,

notwithstanding the positioning of the words, does nothing to abate likely confusion or dilutive effect"). Finally, Plaintiff has also alleged that Defendants used their confusingly similar domain name to profit from the diversion of consumers seeking Plaintiff's services online to Defendants' website, and that they did so after receiving the first cease-and-desist letter objecting to Defendants' unlawful use of the mark. *Id.* ¶¶ 79(a)-(d). As such, Plaintiff has sufficiently alleged facts showing that Defendants' domain name was confusingly similar to Plaintiff's registered trademark and that Defendants acted in bad faith. Thus, a default judgment is appropriate as to Count VII.

### Permanent Injunction

"Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008). "[I]n ordinary trademark infringement actions[,] complete injunctions against the infringing party are the order of the day." *Id.* at 1209 (cleaned up). "The reason is simple: the public deserves not to be led

astray by the use of inevitably confusing marks—even in cases in which more than one entity has a legal right to use the mark." *Id.*

Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Plus, in trademark-infringement cases, there is generally no adequate remedy at law because continued infringement, by its nature, causes irreparable harm. *Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1318 (M.D. Fla. 2013*)* (citing *Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989)); *see also Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 191 (11th Cir. 2005) ("[G]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion."). And the Eleventh Circuit has explained "the 'public interest' relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion." *Angel Flight*, 522 F.3d at 1209. With each prong necessary for injunctive relief satisfied, a permanent injunction against GGL and Lattimore is appropriate.

### Cancellation of Domain Name

Plaintiff requests that Defendants' similarly confusing domain name www.mygenguru.com be cancelled. (Doc. 1 ¶ 81(a); Doc. 18 at 18). "Upon a finding of liability, pursuant to the ACPA, a court may 'order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.'"

*On Clouds GmbH v. Individuals*, No. 25-cv-20882-JB, 2025 WL 1755031, *6 (S.D. Fla. June 16, 2025) (citation omitted); 15 U.S.C. § 1125(d)(1)(c). Given Defendants' liability under the ACPA, Plaintiff's request to cancel Defendants' domain name should be granted.

## Damages

Instead of actual damages or disgorgement of profits, Plaintiff seeks statutory damages for Defendants' willful trademark counterfeiting and cybersquatting, as well as punitive damages related to its common law infringement and unfair competition claims. (Doc. 1 ¶¶ 43, 57, 63, 81(b); Doc. 18 at 18, 24).

## Statutory Damages

In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered for not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(1). In addition, if the court finds defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(2).

When, as here, a plaintiff has established liability for trademark counterfeiting under the Lanham Act, statutory damages are "particularly appropriate in the default

14

judgment context" because it is difficult to ascertain Defendants' profits and because

Defendants have not participated in the litigation. *See Creeled, Inc. v. Individuals*,

No. 22-cv-23683-JEM/Becerra, 2023 WL 6130593, *4 (S.D. Fla. Sept. 11, 2023);

*see also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A]

successful plaintiff in a trademark infringement case is entitled to recover enhanced

statutory damages even where its actual damages are nominal or non-existent.").

Courts have broad discretion to determine the amount of any such damages. *See*

*PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1219 (S.D. Fla.

2004) (citations omitted). "[A]ll monetary awards under Section 1117 are 'subject

to the principles of equity,' [and] … no hard and fast rules dictate the form or

quantum of relief." *Burger King Corp. v. Mason*, 855 F.2d 779, 783 (11th Cir.

1988). Statutory damages in this context are "intended not just for compensation for

losses, but also to deter wrongful conduct." *PetMed Express, Inc.*, 336 F. Supp. 2d

at 1220–1221.

To remedy Defendants' counterfeiting violations, Plaintiff seeks to recover

$100,000 in statutory damages, even though Plaintiff could ask for as much as

$2,000,000. Plaintiff has demonstrated that Defendants willfully infringed and used

a counterfeit mark to engage in "the advertising, promotion, offering, and rendering

of counterfeit engineering services in the field of electricity generator servicing and

engineering services." (Doc. 1 ¶ 38). And the fact that Defendants used an identical

15

trademark to Plaintiff's provides strong evidence that Defendants were purposefully attempting to confuse the marketplace. *See Rolex Watch U.S.A., Inc. v. Lynch*, No. 2:12-cv-542-FTM-38, 2013 WL 2897939, *6 (M.D. Fla. June 12, 2013). Further, despite receiving Plaintiff's cease-and-desist letters, Defendants have continued their infringing activities through their website and on social media platforms. In sum, Defendants acted "with the deliberate intent to trade on the goodwill of plaintiff's Generator Guru mark, cause[d] confusion and deception in the marketplace, and divert[ed] potential sales of plaintiff's services to defendants." *Id.* at ¶¶ 22, 24, 26.

Given the circumstances, a statutory damages award of $100,000 is reasonable. *Cf. Sas v. Individuals*, No. 25-cv-20792-JB, 2025 WL 1754799, *6 (S.D. Fla. June 16, 2025) (awarding statutory damages of $100,000 for each trademark counterfeited); *Chanel, Inc., v. Individuals*, No. 24-cv-22823-JB, 2024 WL 5267144, *5 (S.D. Fla. Sept. 25, 2024) (awarding statutory damages of $100,000 per trademark counterfeited, per type of good offered against each defendant); *Quincy Bioscience, LLC v. Stein*, No. 8:17-cv-984-T-27JSS, 2017 WL 10277184, *5 (M.D. Fla. Nov. 21, 2017), *R&R adopted*, 2017 WL 10277178 (Dec. 7, 2017) (awarding statutory damages of $100,000 for counterfeit trademark). This award not only compensates Plaintiff but also accomplishes the goal of deterrence, and emphasizes "that the trademark laws and

16

court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade." *Bentley Motors Ltd. Corp. v. McEntegart*, No. 8:12-cv-1582-T-33TBM, 2014 WL 408375, *5 (M.D. Fla. Feb. 3, 2014) (quoting *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117,122-23 (S.D.N.Y. 2008)).

As for the cybersquatting claim, Plaintiff also seeks statutory damages of $100,000 under 15 U.S.C. § 1117(d) for Defendants' violations of the ACPA. (Doc. 18 at 2-24). "Pursuant to the ACPA, the Court may award statutory damages 'in the amount of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just.'" *Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1359 (S.D. Fla. 2008) (quoting 15 U.S.C. §1117(d)). As explained, Defendants registered their domain name in bad faith by intentionally copying the Generator Guru mark to divert customers from Plaintiff, as they were directly competing in the electricity generator service and repair industry. Even after being notified of their infringement, Defendants doubled down and continued to advertise counterfeit services on their www.mygenguru.com website, on social media, and on online review platforms, where customers expressed confusion and discontent with Defendants' services.

Plaintiff's request for $100,000 in statutory damages for Defendants' cybersquatting is reasonable. *Cf. Bellefit, Inc. v. Bella Fit Fashion LLC*, No. 24-cv-23910-BLOOM/Elfenbein, 2025 WL 1433661, *7 (S.D. Fla. Mar. 19, 2025)

17

(awarding plaintiff $100,000 for defendants' bad-faith operation of an infringing website); *Punch Clock, Inc.*, 553 F. Supp. 2d at 1359 (awarding $100,000 for infringing a domain name); *Transamerica Corp. v. Moniker Online Servs., LLC*, No. 09-60973-CIV, 2010 WL 1416979, *4 (S.D. Fla. Apr. 7, 2010) (awarding $100,000 for use of a single domain name where defendant also engaged in fraud and concealment).

### Punitive Damages

Punitive damages cannot be recovered under the Lanham Act. *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1183 (11th Cir. 1994) ("Such an award is discretionary, but it may not be punitive and must be based on a showing of actual harm."). However, punitive damages "are available under Florida common law for non-Lanham Act violations in the same action." *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1272 (N.D. Fla. 2009); *see also Galaxy Am., Inc. v. EZ Inflatables*, Inc., No. 2:19-cv-855-JES-MRM, 2021 WL 12092648, *5 (M.D. Fla. Aug. 17, 2021) (granting motion to amend complaint to include punitive damages as part of its claim for trademark infringement under Florida law). Punitive damages may be awarded "only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence."[8] Fla. Stat. § 768.72(2).

---

[8] "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of

18

Plaintiff seeks $50,000 in punitive damages under its common law infringement and unfair competition claims, asserting that Defendants deliberately and willfully copied the Generator Guru mark and continued using it after receiving Plaintiff's cease and desist letters. (Doc. 18 at 24-25). But even though Defendants' conduct may have crossed the threshold of intentional misconduct or gross negligence, an award of punitive damages is not appropriate. Plaintiff has failed to present any evidence of actual damages, and we know nothing about Defendants' financial condition. *Soliday v. 7-Eleven, Inc.*, No. 2:09-cv-807-FTM-29, 2010 WL 4537903, *2 (M.D. Fla. Nov. 3, 2010) (acknowledging that a defendant's financial condition becomes relevant when punitive damages are requested).

"Likewise, a defendant's wealth is a factor for consideration in determining the reasonableness for an award of punitive damages." *Transamerica Life Ins. Co. v. White*, No. 6:23-cv-452-ACC-DCI, 2024 WL 1573962, *9 (M.D. Fla. April 11, 2024) (citing *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1216 (11th Cir. 2010) ("[A]n award must be reviewed to ensure that it bears some relationship to the defendant's ability to pay and does not result in economic castigation or bankruptcy of the defendant.")). Because we have no information

---

the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage. "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct. *See* Fla. Stat. § 768.72(2)(a)-(b).

about Defendants' financial condition or wealth, we have no basis on which to arrive at an appropriate award of punitive damages.

### Attorney's Fees

Plaintiff reserves its right, pursuant to Local Rule 7.01, to submit its motion for attorney's fees after entry of judgment. (Doc. 18 at 28).

### Recommendation

The court should deny the request for punitive damages, declare defendants Generator Guru LLC and Alexander R. Lattimore jointly and severally liable on all counts, and direct the clerk to enter a judgment in favor of plaintiff Generator Guru Limited for **$200,000**.

The judgment should mandate that Generator Guru LLC and Alexander R. Lattimore take all necessary steps to remove all signage, websites, and other advertising material bearing the Generator Guru mark and delete any reference to the mark or any confusingly similar designation in connection with engineering services in the field of servicing or repairing electricity generators.

The judgment should also enjoin Generator Guru LLC and Alexander R. Lattimore from directly or indirectly using or registering the mark or trade name Generator Guru—in any typeface or font—for engineering services in the field of electricity generator servicing and repairing, and for related goods and services in the United States and its territories; registering any domain name

confusingly similar to the mark; committing any act calculated to cause purchasers, consumers, or the general public to believe that goods and services offered by Generator Guru LLC or Alexander R. Lattimore are those rendered, produced, or sold under the control and supervision of Generator Guru Limited, or sponsored, approved, or guaranteed by Generator Guru Limited, or otherwise connected with Generator Guru Limited in any way; and causing, aiding, or abetting any other person from doing any act prohibited by the injunction.

And the judgment should further provide for the cancellation of Defendants' registration of the domain name www.mygenguru.com.

Finally, the court should retain jurisdiction of this action for the purpose of enforcing injunctive relief by way of contempt or otherwise.

### Directions to the Clerk

The CLERK is directed to mail a copy of this Report and Recommendation to the Defendants at Generator Guru, LLC, c/o Alexander R. Lattimore, 470 Citi Centre Street #1177, Winter Haven, Florida, 33880.

Recommended on February 5, 2026

NICHOLAS P. MIZELL
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1.